TOWN OF BELLEAIR, FLORIDA, a municipal corporation, et al., v. TRUMAN H. NEWBERRY, individually, and as Executor under the Last Will and Testament of John S. Newberry, deceased, et al.

8 So. (2nd) 7                                Special Division B
May 8, 1942

Mabry, Reaves, Carlton & White, and D. G. Haley, for appellants.

Harry L. Thompson, and Edgar John Phillips (Cleveland, Ohio) for Truman H. Newberry, Knight & Thompson, and Harold C. Farnsworth for Exchange National Bank of Tampa, appellees.

THOMAS, J.:

The Exchange National Bank of Tampa filed a bill of complaint against Truman H. Newberry, individually and as executor of the last will and testament of John S. Newberry, and against numerous other defendants, praying that the court determine the rights of the various claimants of a certain fund, deposited with the plaintiff, so that distribution could be made accordingly and the bank discharged from further responsibility for the money.

Upon the answers of some of the defendants, including the one we have named and Town of Belleair, testimony was taken and the chancellor entered his decree ordering that all of the fund remaining after the deduction of certain amounts for the services of the bank and its attorneys be paid to Truman H. Newberry, as executor. The correctness of this decree is challenged by the Town of Belleair and some of the other defendants.

Town of Belleair was in financial difficulties and had instituted suit in the United States District Court for the Southern District of Florida to effect a settlement of indebtedness under the so-called "Wilcox Bankruptcy Act" (Title II, Sections 301-303, U.S.C.A.). Before this proceeding was concluded the

Supreme Court of the United States, 25 May 1936, declared that law unconstitutional and the same day John S. Newberry filed an action of mandamus against Town of Belleair to coerce the payment of approximately twenty-seven thousand dollars upon the surrender of certain coupons. This suit culminated in a peremptory writ entered 8 June 1936 commanding Town of Belleair to make the payment to the relator or his attorney and no appeal was ever taken from the judgment. As a result the coupons were redeemed in cash.

The day of the issuance of the peremptory writ of mandamus attorney for the relator addressed a letter to the municipality reciting that he had that day collected approximately twenty-seven thousand dollars under the writ, stating the desire to carry out the original plan of readjustment of the bonded indebtedness of the town and proposing, "in consideration of the Town of Belleair cooperating with us" to that end, to deposit the sum in the First National Bank of Clearwater in the names of the attorney and one of the town commissioners with the understanding that the town would join in efforts to get all of the bondholders who consented to the original scheme of refinancing to agree voluntarily to a similar plan. It was further stipulated that if within ninety days cooperation of not less than ninety per cent of the bondholders was not accomplished the fund, after deducting certain costs, should be distributed among those bondholders who had agreed to the refunding plan presented to the Federal Court. In conclusion the letter contained a provision that "this memorandum" might be "modified at any time by the mutual agreement of Edgar John Phillips [the attorney], as

representative of the bondholders and the Town of Belleair." The memorandum was accepted by the commissioners of this town who agreed to carry out its provisions.

Negotiations between the interested parties including the commissioners of the town continued and eventually, 16 October 1936, a letter was addressed by the attorney to the Exchange National Bank of Tampa, which had been selected as a convenient depository, enclosing a check for approximately nineteen thousand dollars, being the initial sum after certain deductions not now questioned. Instructions were that it be distributed to holders of outstanding bonds in the payment of interest for one year at the rate of two per centum less a fixed charge for expenses. Upon the interpretation of this communication rests primarily the determination of this litigation. As we have shown, the first contract, dated 8 June 1936, provided that modification could be accomplished at any time with the joint consent of the Town of Belleair and the attorney representing the appellees, and the deduction seems logical that these parties agreed to a revision because the communication of 16 October 1936 was signed only by the attorney and he transmitted the money, which, according to the first contract, could have been withdrawn without consent of his co-depositor. There was a change in depositories and in the amount of the deposit. It is important to note that in his letter enclosing the check to the latter bank he cautioned that institution "to make sure that an endorsement is prominently stamped [on bonds presented for the reduced interest installment] . . ., to the effect that payment has been made in full for interest for one year, ended August 31, 1936." It

was directed in the letter that the holders of outstanding bonds delivered for such endorsement should sign a proposed agreement with reference to refunding.

It is significant that the letter to which we have referred contained the statement that any "surplus should be held by you, subject to our further instructions." Inasmuch as the letter was signed only by the attorney we understand that any residue would be disbursed upon the order of the attorney and his clients. Apparently, the representative of the city and the bondholders attempted for awhile, at least until 16 October 1936, to effectuate the plan of refunding contemplated in the original proceeding in the Federal court but as time passed the cooperation of the city diminished and finally halted. That the program entirely failed is evidenced by the facts that the money deposited has remained intact for more than five years and but few of the bondholders ever applied for the payment of interest.

The obvious purpose of Newberry in voluntarily placing the money on deposit was to the effect the refunding of the bonded indebtedness of the city and thereby protect his investment in the bonds. That could not have been gained without the cooperation of the city and the bondholders. When but a comparatively small number of owners presented their securities to the bank to be endorsed and to receive the lesser amount of interest the object failed. It appears that the only consideration for allowing them to participate in the money awarded him by the court was the acceptance of diminished interest for a specified period and the consent, too, to a refunding of the debt. In those circumstances we think that none of

the appellant bondholders has a valid claim to the fund comprised entirely of the money obtained by Newberry in the mandamus suit.

It is our view also that at the time of the letter of 16 October 1936 there was a definite modification of the initial understanding, although not an abandonment of it as the chancellor held, because it is necessary to refer to this instrument to construe the later arrangement and to comprehend what was intended by the interested parties with reference to the money eventually placed on deposit with the Exchange National Bank.

Long after the recovery of the money in the mandamus suit some of the bonds, coupons for which had been surrendered, were declared invalid in another proceeding. It will be recalled that no writ of error was ever issued to review the judgment in that action and that the city immediately complied with the judgment entered by redeeming the coupons held by the relator. Clearly the court had jurisdiction and the city had the opportunity to present any appropriate defenses to the alternative writ or to appeal if dissatisfied with the judgment. The city cannot in the present proceedings collaterally attack that judgment in mandamus and succeed in collecting a part of the deposit. State ex rel. Durrance v. City of Homestead, 125 Fla. 105, 169 So. 593.

Affirmed.

BROWN, C. J., WHITFIELD, and CHAPMAN, JJ., concur.